UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARIYA KARMAMOLDOYEVA,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>Warden of Otay Mesa Detention Center,<br><br>　　　　　　　　　　Respondent. | Case No.: 26-cv-00423-GPC-MSB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Petitioner Dariya Karmamoldoyeva ("Petitioner") is a noncitizen currently detained at the Otay Mesa Detention Center. ECF No. 1 ("Pet.") at 1.[1] On January 23, 2026, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging her continued detention without bond and naming the Warden of the Otay Mesa Detention Center ("Respondent") as the Respondent. ECF No. 1. For the following reasons, the Court **GRANTS** the petition for a writ of habeas corpus. The Court VACATES the hearing set for February 6, 2026.

/ / /

---

[1] Page numbers reflect CM/ECF pagination.

## I. BACKGROUND

### A. Factual Background

Petitioner entered the United States on July 9, 2022, with her mother, Aigul Kazybayeva, and her two siblings, and was granted parole. Pet. at 6. On December 21, 2022, Petitioner applied for Form I-589 Application for Asylum and for Withholding of Removal "as a rider Respondent to her mother Aigul Kazybaeva's asylum application. ECF No. 5 ("Trv.") ¶ 2. On March 29, 2023, the immigration judge dismissed their case based on prosecutorial discretion. *Id.* ¶ 3. Upon dismissal, "Petitioner joined her father's asylum claim pending with the USCIS on March 16, 2024, as a derivative applicant." *Id.* ¶ 4.

Since arrival, Petitioner has complied with all conditions of her parole, appeared for ICE check-ins, received work authorization, was issued a California driver's license and Social Security Card, and applied for asylum. *Id.* ¶ 5; Pet. at 6.

On November 24, 2025, while Petitioner was working as an Uber driver, Petitioner inadvertently crossed onto a military base and was detained. *Id.* On that same day, ICE terminated Petitioner's parole without notice.

On January 14, 2026, an immigration judge denied Petitioner's request for in custody redetermination, concluding that Petitioner was detained pursuant to 8 U.S.C. § 1225(b) and therefore, ineligible for bond under 8 U.S.C. § 1226(a). ECF No. 1-2 at 2.

### B. Procedural Background

On January 23, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging her continued immigration detention. Pet. at 6. On January 28, 2026, Respondent filed a response to the habeas petition. ECF No. 4 ("Ret."). On January 30, 2026, Petitioner filed a traverse. ECF No. 5.

Petitioner presents four claims. Pet. at 6. First, Petitioner alleges that her detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. Pet. at 6. Petitioner's second claim alleges that Respondent violated the INA as interpreted by

*Zadvydas*. *Id*. Third, Petitioner alleges that ICE's termination of her parole and subsequent detention constituted arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"). *Id*. Fourth, Petitioner claims that her continued detention unlawfully deprives her of her right to education. *Id*. at 7.

Petitioner requests that the Court grant the Petition for Writ of Habeas Corpus, ordering her release. Pet. at 7. Petitioner alternatively requests that the Court order Respondent to provide her with an immediate bond hearing before an IJ. *Id*. Petitioner also requests the award of Petitioner's attorney's fees and costs under the Equal Access to Justice Act, as well as under any other basis justified under law. *Id*.

## II. STATUTORY FRAMEWORK

### A. Standard & Expedited Removal Proceedings

An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is "processed either through expedited removal proceedings or through regular removal proceedings." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019). The regular removal procedure is also known as "section 240 proceedings." 240 proceedings involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if she would be persecuted upon return to her home country. 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The DHS Secretary has discretion to release a noncitizen on parole during this process. In one procedure, an arriving asylum seeker may be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure puts the immigrant in conditional parole. *Id*. § 1226(a). In either case, to release a noncitizen from custody requires a case-by-case determination, where the noncitizen must "demonstrate to the satisfaction of the officer that such release would not pose a

danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

The second, more streamlined process is expedited removal, governed by 8 U.S.C. § 1225. Under these proceedings, noncitizens can be ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because of the truncated procedure, expedited removal is limited to noncitizens meeting several requirements. First, a noncitizen is potentially eligible for expedited removal if he (1) sought to procure immigration status or citizenship via fraud or false representations or (2) "at the time of application for admission," failed to satisfy certain documentation requirements. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 U.S.C. §§ 1182(a)(6)(C), 1182(a)(7). Second, expedited removal is further cabined to noncitizens who 1) are categorized as "arriving in the United States," or 2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id*. § 1225(b)(1)(A)(i)–(iii). Within that second requirement, the Attorney General can designate the population of noncitizens subject to expedited removal. *Id*. § 1225(b)(1)(A)(iii)(I).

Once detained under expedited removal, if the noncitizen indicates an intention to apply for asylum and the asylum officer finds the fear to return to be credible, the applicant's claim will be fully considered in a standard removal hearing. *Thuraissigiam*, 591 U.S. 103, 110 (2020).

### B. 2025 Designation for Expedited Removal

The Attorney General has delegated the office's expedited removal designation power to the DHS Secretary. Before January 2025, DHS had only designated noncitizens as eligible for expedited removal if they were identified as "arriving," had arrived by sea within the last two years, or had been apprehended within 14 days of entry and 100 miles

of the border. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68924 (Nov. 13, 2002); Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004). In January 2025, DHS published the 2025 Designation, authorizing expedited removal to be exercised to the "full scope of its statutory authority." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025). DHS has stated that this full scope applies to noncitizens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years." *Id*.

In its implementation of the 2025 Designation, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief" and executing "courthouse arrests." *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *5 (D.D.C. Aug. 29, 2025). The DHS' typical procedure for these courthouse arrests consist of "moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in the section 240 proceedings." *Id*.

### III.  DISCUSSION

Petitioner claims her detention violates the Fifth Amendment Due Process Clause, the APA, the INA, and her right to education Pet. at 6-7. Respondent has conceded that "Petitioner is detained under 8 U.S.C. § 1226(a) and is entitled to an order from this Court directing a bond hearing be held pursuant to 8 U.S.C. § 1226(a)." Ret. at 2. At the same time, Respondent "reserves the right to supplement this response in the event of a stay of

enforcement of the *Bautista* final judgment, appellate relief, or a change in DHS policy." *Id*. Though Respondent has conceded on that claim, the Court will conduct a full analysis of the issues given Respondent's reservation.

### A. Fifth Amendment Due Process

#### i. Entitlement to Due Process Rights

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside our borders, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Under this wide umbrella, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Here, Petitioner has "passed through our gates" and "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Because Petitioner has developed an interest in remaining during her time here, "the procedures used to remove [her] must adequately protect" that interest. *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *10 (D.D.C. Aug. 29, 2025).

This instant case stands in contrast to *Thuraissigiam*. There, the respondent was a noncitizen detained close to the border and shortly after unlawful entry, and keeping those characteristics in mind, the Supreme Court held that those "in *respondent*'s position ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (emphasis added). This holding only reinforced the precedent that noncitizens "on the threshold of initial entry

stand[ ] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. 212.

In this case, Petitioner is not an "arriving" noncitizen but one that has been physically present in the United States for over three years. This substantial amount of time indicates she is afforded the Fifth Amendment's guaranteed due process before removal. *See Yamataya v. Fisher,* 189 U.S. 86, 87 (1903) (finding a noncitizen was entitled to due process before removal despite having spent only four days in the US).

### ii. Government's Adherence to Due Process

Generally, due process protections depend on the situation and must account for (1) the private interest at issue, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Here, Petitioner alleges that she was detained while her asylum application was pending and while on parole without any opportunity to be heard prior to being arrested and detained. Pet. at 6; Trv. ¶¶ 4-5.

First, Petitioner has a private interest in remaining free, which developed over the more than three years she resided in the United States. Pet. at 6. *See Morrissey v. Brewer,* 408 U.S. 471, 482-483 (1972); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). This liberty interest applies to Petitioner, even in her parole status. For example, *Morrissey*—though analyzing the criminal parole context—found that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others…[thus it] must be seen within the protection of the [Fifth] Amendment." 408 U.S. at 482.

In the deportation context, detention has minimum due process protections. Generally, detention is seen "as a constitutionally valid aspect of the deportation process,"

1 *Demore v. Kim*, 538 U.S. 510, 523 (2003), and the government holds the discretion to detain an immigrant pending removal, 8 U.S.C. § 1226(c). However, that discretion is not unbounded. Detention pending removal proceedings has "two regulatory goals"— ensuring future appearances and preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This logically also extends to the granting of parole and its revocation. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). These primary goals provide guidance for the floor of due process afforded to noncitizens for detention and parole.

Further, Petitioner has a Fifth Amendment right to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Here, Petitioner was initially provided due process for her removal proceedings following her entry into the United States on July 9, 2022. Pet. at 6; Trv. ¶¶ 1, 5. She was able to enter the country and was given parole after an interview with a CBP officer who determined she was not a flight risk or a danger to the community. *See id*. She has timely applied for asylum and regularly complied with ICE check-ins. Trv. ¶ 5. The proceedings have created a protectable expectation of her due process rights in her removal proceedings and the fair procedures this country guarantees. Thus, Petitioner was entitled to due process in her parole revocation. Particularly, she was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination.

Second, the procedures used present a substantial risk of erroneous deprivation of those interests and are not outweighed by the Government's interest. In *Make the Rd. New York v. Noem*, which considers the application of the 2025 Designation, the court

determined that "[b]efore removing someone through expedited removal, the Government must make several threshold determinations: whether the individual has been continually present in the United States for two years; whether they have previously been admitted or paroled; whether they are inadmissible on one of the grounds that make them eligible for expedited removal; whether they have a credible fear of persecution; and whether they are a citizen, lawful permanent resident, refugee, or asylee." No. 25-CV-190-JMC, 2025 WL 2494908, at *14 (D.D.C. Aug. 29, 2025). Each of these determinations present a substantial risk of error and harm to Petitioner's interests in remaining at liberty. This is especially true in regard to the credible fear interview—where individuals might not be appropriately referred for the interview or not afforded an effective opportunity to be heard—and the continual presence determination. *Id*. at *15-17.

Respondent has also failed to demonstrate a significant interest in Petitioner's detention. ICE did not provide Petitioner individualized notice or reasoning prior to her arrest and detention on November 24, 2025, and Respondent has presented no legitimate reason for why those decisions were made. Petitioner does not have a criminal record and complied with ICE reporting requirements prior to detention. Pet. at 6; Trv. ¶ 5. There is no indication that she is a flight risk or presents a danger to the community, which strike at the core, guiding goals for parole, and Respondent has not supplied any additional information to the contrary. Denying Petitioner notice and reasoning on revocation of her parole took away a meaningful opportunity to contest and violated due process. *See Pinchi*, 792 F. Supp. 3d at 1032-35; *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146-47 (D. Or. 2025) (D. Or. July 9, 2025).

Finally, "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). The Supreme Court has limited retroactivity under the Due Process Clause under its "prohibition against arbitrary and irrational legislation."

*United States v. Carlton,* 512 U.S. 26, 30 (1994) (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984)). Abiding to this principle, "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

The 2025 Designation's language does not clearly require that it be applied to individuals who entered the United States prior to its effective date. Therefore, executing the Designation over Petitioner who entered the country before the Designation's effective date violated the Due Process Clause.

For those reasons, the Court finds that Petitioner's due process rights have been violated.

### B. Administrative Procedure Act

Under the APA, an agency action may be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). For a challenged agency action to be upheld, the agency "must explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (internal quotations omitted) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Petitioner argues Respondent violated APA when they revoked Petitioner's parole and detained her without notice or explanation. Pet. at 6.

### i. Legal Standards under the APA

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704; *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 61–62 (2004). Reviewable agency action includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action is deemed final if it (1) "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process," *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948), and (2) is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

### ii. Failure to Abide by APA

In general, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Following this, a noncitizen should not be returned to custody unless the purposes of the parole have been served. *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-45 (D. Or. 2025). Additionally, under regulation, parole must be terminated upon written notice after an individualized determination that the purposes no longer apply. 8 C.F.R. § 212.5(e)(2)(i); *see*, *e.g.*, *Bostock,* 792 F. Supp. 3d at 1146-47 (finding parolee must receive written notice of impending revocation with reasons for revocation); *Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *6 (E.D. Cal. Aug. 14, 2025) (finding a case-by-case analysis is needed to revoke parole); *but see Doe v. Noem*, No. 25-1384, 2025 WL 2630395, at *9 (1st Cir. Sept. 12, 2025) (finding an individualized termination of parole is not required). In sum, to meet statutory and regulatory

requirements, revocation should only occur when the parole's purpose is served, *and* the noncitizen is provided written notice. *Bostock*, 792 F. Supp. 3d at 1144-46.

However, neither of the other two conditions were met here. First, Petitioner was not provided any notice as to the termination of her parole. Second, Respondent must provide at minimum some reasoning explaining why the Petitioner would now be considered a flight risk or danger to the community. *See Castellon*, 2025 WL 2373425, at *12; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-35 (N.D. Cal. July 24, 2025). Given Respondent has not attempted to justify the revocation for Petitioner, this Court holds the Respondent has acted arbitrarily and capriciously in violation of the APA.

### iii. Initiation of Expedited Removal Proceedings

The application of expedited removal is limited to noncitizens who meet several requirements. One of those requirements cabins initiation of expedited removal to noncitizens who (1) are categorized as "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii); *see also Coalition for Human Immigrant Rights v. Noem*, No. 25 Civ. 872 (JMC), 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025).

Petitioner is no longer an "arriving" noncitizen after having resided here for over three years. In addition, beyond the fact that she has been present in this country for a 3-year period, she also has been paroled into the United States. Therefore, the Court finds that Petitioner could not be subject to § 1225.

In sum, Respondent's actions are arbitrary, fail to adhere to the law, and therefore, violate the APA.

/ / /

/ / /

## IV. CONCLUSION

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus.[2] The parties are **ORDERED** to file a Joint Status Report within 72 hours of this Order's filing, confirming Petitioner's release. Further, in aid of the Court's jurisdiction, which is hereby retained, the Court **ORDERS** pursuant to the All Writs Act, 28 U.S.C. § 1651, that Respondent shall not cause Petitioner to be re-detained during the pendency of her removal proceedings without prior leave of this Court. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.[3]

**IT IS SO ORDERED.**

Dated: February 2, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[2] Having reached this conclusion on Petitioner's first three claims for relief, the Court declines to decide the merits of Petitioner's fourth claim.

[3] In her prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees. Pet. at 7. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.